# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Patrick Baker, Richard J. Sawhill, and James Buzzie, as Trustees of the Iron Workers' Local 25 Vacation Pay Fund,<br><br>Plaintiffs<br><br>v.<br><br>Iron Workers' Local 25 Vacation Pay Fund, and BeneSys, Inc., a Michigan corporation.<br><br>Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Patrick Baker, Richard J. Sawhill, and James Buzzie, as Trustees of the Iron Workers' Local 25 Vacation Pay Fund, by and through their undersigned counsel and for their Complaint for Declaratory Judgment against the Iron Workers' Local 25 Vacation Pay Fund and BeneSys, Inc., state as follows:

## NATURE OF ACTION AND JURISDICTION

1. This is an action to enforce fiduciary obligations under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1101, *et seq.*, and to require the Iron Workers' Local 25 Vacation Pay Fund (the "Fund")

and its third-party administrator, BeneSys, Inc. ("BeneSys"), to take action with respect to a required tax filing for the Fund, as further detailed herein.

2. This Court has the power to determine the parties' respective rights and other legal relations as requested herein pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3. Plaintiffs are fiduciaries of the Fund such that this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. § 1132(e)(1).

4. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## THE PARTIES

5. The Defendant Fund is a multiemployer employee welfare benefit fund that was established by a Declaration and Agreement of Trust dated July 1, 1962, as subsequently amended and restated, between the Great Lakes Fabricators and Erectors Association (the "Association") and the Local No. 25, International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers, A.F.L., C.I.O ("Local 25") to provide vacation benefits to participants in the plan established by the Fund. The Fund sponsors the Iron Workers' Local 25 Vacation Pay Fund Plan (the "Plan") to pay these benefits.

6. The Plan is funded by contributions from employers covered by collective bargaining agreements with Local 25.

7. The Fund is administered by a joint Board of Trustees pursuant to the Labor Management Relations Act of 1947 (the "Taft-Hartley Act"), Section 302(c), 29 U.S.C. § 186(c), and is governed by ERISA.

8. The joint Board of Trustees is comprised of six trustees who are fiduciaries of the Fund under ERISA. The Association appoints three Management Trustees (currently Plaintiffs Patrick Baker, Richard J. Sawhill, and James Buzzie), and Local 25 appoints three Labor Trustees (currently Michael Randick, Wayne Coffell, and Dennis Aguierre).

9. The joint Board of Trustees for the Fund and Plan holds board meetings typically quarterly to discuss the operations of the Plan and Fund. Action taken with respect to the administration of the Plan and Fund requires a motion, second, and a majority vote by the Board of Trustees.

10. Although the joint Board of Trustees has the fiduciary responsibility to administer and oversee the Fund, the Board of Trustees has delegated certain administrative tasks to BeneSys, the Fund's third-party administrator.

11. BeneSys has been providing administrative services to the Fund since September 2018, and is responsible for processing benefit payments, maintaining books and records for the Fund and Plan, and assisting with the filing of necessary governmental documents and reports, among other things.

## FACTUAL BACKGROUND

12. At all times, the Fund has purported to operate as a tax-exempt voluntary employee benefits arrangement ("VEBA") under Section 501(c)(9) of the Internal Revenue Code, 26 U.S.C. § 501(c)(9) ("501(c)(9)"). Having the 501(c)(9) status ensures that the earnings on dollars invested by the Fund are considered tax-exempt by the Internal Revenue Service ("IRS"). Benefits ultimately paid to participants under the Plan, however, are taxable.

13. As a 501(c)(9) organization, the Fund is required to file an annual tax return for exempt organizations – IRS Form 990, in addition to the benefit plan return – Form 5500. IRS Form 990 is required to be executed by an officer of the organization under penalties of perjury. For this Fund, the Chairman of the Board of Trustees signs the Form 990. The form itself is prepared with the assistance of the Fund's auditor, Plante & Moran, PLLC ("Plante").

14. Since April 2017, the Fund has operated with co-counsel, one appointed by Labor and one by Management/Employers.

15. In 2017, the Board of Trustees directed the Management Trustees' counsel to perform a comprehensive compliance review of the Fund and other related multiemployer funds established by the Association and Local 25.

16. As a result of the compliance review, the Management Trustees and their counsel determined there were certain features of the Plan that could compromise the

tax-exempt status of the Fund because the features appear to violate the requirements for a tax-exempt VEBA that can provide "other benefits" (such as vacation benefits) under Section 501(c)(9).

17. The two features of the Plan determined to be problematic to the Fund's tax-exempt status are: (i) the frequency with which participants receive distributions of benefits under the Plan; and (ii) the ability of participants to assign their vacation benefits to pay union dues and other non-vacation-related purposes, such as funding a political action committee fund (these two features are collectively referred to herein as the "Plan Features").[1]

18. The Management Trustees and their counsel raised their concerns regarding the Plan Features and resulting tax compliance issues with the Labor Trustees and the Labor Trustees' counsel in November 2017.

19. The Management Trustees proposed amending the Plan to revise or eliminate the problematic Plan Features to ensure compliance with Section 501(c)(9) and the permitted operations of a tax-exempt vacation plan, however no action was agreed to by the Labor Trustees.

20. The Management Trustees continued to raise concerns regarding the Plan Features and the Fund's compliance with Section 501(c)(9) over the next year,

---

[1] Whether these Plan Features violate the requirements of Section 501(c)(9) is ultimately a matter for the Internal Revenue Service to decide and is not an issue that Plaintiffs are asking this Court to resolve.

5

however the Labor Trustees and their counsel continually declined to take action with respect to these issues.

21.   In approximately November 2018, the joint Board of Trustees finally agreed to direct their joint co-counsel to discuss issues related to the 501(c)(9) status of the Fund and to work towards a resolution regarding the Plan Features.

22.   As the negotiations between counsel occurred, it was necessary for the Fund's auditor to begin preparing the Form 990 for fiscal year ending April 2018, which was required to be submitted to the IRS by March 15, 2019, after all applicable extensions.

23.   In light of concerns expressed by management counsel regarding the Fund's compliance with Section 501(c)(9), Plante was unable to complete an audited financial statement for the Fund for the fiscal year ending April 2018, and the required Form 5500 could not be filed by its final February 15, 2019 due date.

24.   After continued discussions on the topic, on March 12, 2019, joint counsel for the Board of Trustees agreed to take corrective action that included amending the Plan to correct the Plan Features to be compliant with Section 501(c)(9). This agreement was reached between the undersigned attorney William Cumming of Hessian & McKasy, P.A., as counsel appointed by the Management Trustees, and Michael Asher of Sullivan, Asher, Ward, & Patton, P.C. as counsel appointed by the Union Trustees.

25. As a result of this agreement, on March 15, 2019, Plaintiff Management Trustee Patrick Baker (the Chairman of the Fund at the time) signed the Form 990 for plan year ending in April 2018, which was then submitted by the Fund's auditor to the Internal Revenue Service for processing, allowing the Form 990 to be timely filed.

26. By signing the Form 990, Mr. Baker was required to represent and certify under penalties of perjury that the information on the form was correct, including that there were no taxes owed and that the Plan was operated in compliance with Section 501(c)(9). Mr. Baker was comfortable making this representation because, upon good faith information and belief, he understood the tax-compliance issues for the Fund were going to be resolved based on the agreement of the Board of Trustees and their counsel that the Plan would be amended to correct the questionable Plan Features to ensure compliance with Section 501(c)(9).

27. The Board of Trustees met for a regularly scheduled meeting on March 25, 2019, just ten days after the Form 990 was submitted to the IRS. At this meeting, when the Management Trustees moved to ratify the recent agreement to amend the Plan to correct the Plan Features, Labor Trustees' counsel, Mr. Asher, announced that the Labor Trustees would no longer agree to amend the Plan and that there was no basis to do so. Mr. Asher asserted that the concerns regarding the Plan Features and tax-exempt status of the Fund were not supported by any legal authority, and were

simply a matter of Management Counsel's personal opinion, and therefore were not required to be acted upon.

28. Accordingly, there was no motion and the Board of Trustees did not vote on whether to amend the Plan to correct the Plan Features at the March 25, 2019 Board meeting. However, the Form 990 had already been filed and signed by Trustee Baker with the understanding that an amendment to the Plan would be ratified and effectuated at that meeting.

29. Left without any resolution, the Management Trustees continued to discuss how to correct the Plan Features in light of the Labor Trustees' refusal to amend the Plan as previously agreed-upon. The Management Trustees also discussed with Plante whether an amended Form 990 needed to be filed to accurately reflect the Trustees' now unaddressed concerns surrounding the tax-exempt status of the Fund and the problematic Plan Features, or if the previously filed 990 return could be withdrawn. Plante advised that the filed return could not be withdrawn, and the only available correction of the return was to file an amended return.

30. The Board of Trustees had another scheduled board meeting for June 19, 2019, at which the Management Trustees intended to discuss with the Labor Trustees the need to amend the previously-filed Form 990 if the Plan Features were not going to be addressed via an amendment to the Plan. However, the Labor Trustees chose not

to attend the June board meeting, meaning no discussions occurred and no action could be taken.

31. The Board of Trustees most recently had a board meeting on September 11, 2019. Prior to this meeting, the Management Trustees had directed their appointed counsel to prepare a written opinion to the joint Board of Trustees regarding several fiduciary issues that concerned them, including the tax-exemption issue with respect to the Fund and the Plan Features, and whether the Trustees had an obligation to self-report this issue or to alternatively take any other action.

32. At the September meeting, management counsel presented its report, which recommended that the Plan be amended to correct the Plan Features, or in absence of such action, an amended Form 990 be filed to correct the statements made on the original form that reflected that there were no tax compliance issues with the Fund.

33. As a result of the report, Management Trustee Richard Sawhill attempted to make a motion that would require the Board of Trustees, in the absence of amending the Plan to correct Plan Features, to file an amended Form 990 with the IRS to accurately reflect the uncertain tax position of the Plan and its compliance with Section 501(c)(9).

34. In response to Mr. Sawhill's attempted motion, Labor Trustee Michael Randick (the Fund's current Chairman) refused to allow Mr. Sawhill to make a motion

on this issue and instead declared that Mr. Sawhill's attempted motion was out of order. As a result, no motion was made and no proposed action could be voted on.

35. Since the September 11, 2019 meeting, the Labor Trustees have not agreed to take any joint action with the Management Trustees to amend the Plan or file an amended Form 990.

36. It has now been approximately 22 months since the Management Trustees first attempted to correct the Plan Features and address issues related to the Fund's compliance with Section 501(c)(9).

37. An agreement was originally reached in March 2019 to resolve these issues, which precipitated the filing of the fiscal year 2018 Form 990, but that agreement has since collapsed.

38. Based on the actions and inactions of the Labor Trustees at the last several Board meetings, it is clear to the Management Trustees that the Labor Trustees will not agree to take any action to amend the Plan to address ongoing issues with the Plan Features or amend the filed return.

39. Because the Plan was not amended as agreed-upon in March 2019 to correct the Plan's problematic Plan Features, an amended Form 990 needs to be filed with the IRS to accurately reflect the uncertainty regarding the Plan's compliance with Section 501(c)(9) due to the still-existing problematic Plan Features.

40. Given the inaction of the Plan to address the questionable Plan Features or agree to file an amended Form 990, Court intervention is necessary to ensure the joint Board of Trustees takes action to fulfill their fiduciary duties in administering the Plan and file an accurate tax return.

41. If no action is taken by the Plan to address questions regarding its tax-exemption status, all Trustees would be exposed to fiduciary liability for failing to operate the Plan within applicable law, including Section 501(c)(9) which the Fund purports to operate under. This is an outcome the Management Trustees desire to avoid.

## COUNT I

## DECLARATORY JUDGMENT

42. Plaintiff Trustees hereby incorporate by reference the allegations contained in Paragraphs 1 – 41 of this Complaint as if fully set forth herein.

43. The Management Trustees seek a declaration that the Fund – and its third party administrator BeneSys – have the obligation to take action to correct statements previously made to the IRS on the Form 990 regarding the Fund's compliance with the requirements of Section 501(c)(9).

44. The circumstances under which the Fund filed its Form 990 on March 15, 2019 have since changed now that the Labor Trustees and their counsel refused

11

to agree to amend the Plan to remedy issues related to the Plan Features and the Fund's compliance with Section 501(c)(9).

45. A real and actual controversy exists as to whether action needs to be taken to file an amended Form 990 as the current Chairman of the Fund has refused to permit such proposed action to come to a vote, and the former Chairman and current Trustee has signed a return under penalties of perjury that is no longer correct.

46. It is incumbent upon all Trustees to ensure that the Fund for which they are fiduciaries is operating and being administered in compliance with all applicable law, which includes ERISA and the tax-exemption requirements of IRC Section 501(c)(9).

47. A declaration is necessary to resolve this actual controversy and to require the Fund and BeneSys to take action with respect to the Fund, which in absence of an amendment to the Plan that corrects the questionable Plan Features, would require the Fund to submit an amended Form 990 to accurately represent the Trustees' uncertainty regarding whether the Fund remains in compliance with the requirements of Section 501(c)(9). The Internal Revenue Service will then be in a position to determine to what extent the Plan is or is not in compliance with Section 501(c)(9).

## COUNT II

## EQUITABLE RELIEF UNDER SECTION § 502(a)(3) of ERISA

48. Plaintiff Management Trustees hereby incorporate by reference the allegations contained in Paragraphs 1 – 47 of this Complaint as if fully set forth herein.

49. The Management Trustees are named fiduciaries of the Plan and are entitled to seek equitable relief under ERISA § 502(a)(3).

50. The circumstances under which the Fund filed its Form 990 on March 15, 2019 have since changed now that the Labor Trustees and their counsel refused to agree to amend the Plan to remedy issues related to the Plan Features and the Plan's compliance with Section 501(c)(9).

51. As a result of these changed circumstances, an amended Form 990 needs to be filed to ensure that the form accurately reflects the current uncertainties regarding the tax position of the Fund.

52. The Labor Trustees have repeatedly failed to take action to address ongoing concerns raised by the Management Trustees regarding the Plan's compliance with applicable law and Section 501(c)(9).

53. It is incumbent upon all Trustees of the Fund to ensure that the Plan for which they are fiduciaries is operating and being administered in compliance with

all applicable law, which includes ERISA and the tax-exemption requirements of IRC Section 501(c)(9), and that required government filings are accurate.

54. Accordingly, it would be appropriate and equitable for this Court to require the Fund to take action by filing an amended Form 990 to accurately represent the Fund's current tax position to the IRS to ensure compliance with applicable law.

## PRAYER FOR RELIEF

WHEREFORE, the Trustees respectfully request the following relief:

1. For an Order declaring that the Fund shall take action to resolve ongoing compliance issues regarding its tax-exemption status under Section 501(c)(9);

2. For an Order directing the Fund and BeneSys to direct the Fund's auditor, Plante, to prepare an amended Form 990 for the 2018 fiscal year and to submit the amended return to the IRS so that the return accurately reflects the uncertain tax positions regarding the Fund's purported compliance with Section 501(c)(9);

3. For such other relief as this Court deems just and proper.

Dated: October 9, 2019

                                                  HESSIAN & MCKASY, P.A.

/s/ William A. Cumming
William A. Cumming (#175067 - MN)
Laura H. Lindsay (#392758 - MN)
3700 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
(612) 746-5775
wcumming@hessianmckasy.com
laura.lindsay@hessianmckasy.com

*Attorney for Plaintiffs*

15