UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CHRIS VLK et al.**, <br><br> Plaintiffs, <br><br> vs. <br><br> **IRON WORKERS' LOCAL 25 VACATION PAY FUND et al.**, <br><br> Defendants, <br><br> and <br><br> **MICHAEL RANDICK, DENNIS AGUIRRE, and WAYNE COFFELL, as Trustees of the Iron Workers' Local 25 Vacation Pay Fund** <br><br> Defendants-Intervenors. | **19-CV-12963-TGB** <br><br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

Before the Court is Intervening Defendants' Motion to Dismiss. (ECF No. 20).

## Introduction

Plaintiffs Chris Vlk[1], Richard J. Sawhill, and James Buzzie, Trustees of the Iron Workers' Local 25 Vacation Pay Fund, have brought

---

[1] Plaintiffs have advised the Court that Patrick Baker, previously a named plaintiff, has resigned as Management Trustee, and Chris Vlk has been appointed in his place. ECF No. 23, PageID.275. The Clerk is direct to amend the case caption to include the plaintiffs named here.

this action seeking declaratory judgment and equitable relief under §502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendants Iron Workers' Local 25 Vacation Pay Fund. Plaintiffs seek a declaratory judgment that would require Defendants to amend the Form 990 it filed with the IRS in connection with its 2018 taxes. Compl. ¶ 54, ECF No. 1, PageID.14. This Court previously granted Proposed Intervenors' Motion to Intervene (ECF No. 7) and Motion to be Allowed to File Motion to Set Aside Clerk's Default (ECF No. 14). For the reasons set out below, their motion to dismiss will be granted.

## Allegations of the Complaint

Defendant Iron Workers' Local 25 Vacation Pay Fund (the "Fund") is a multiemployer employee welfare benefit fund that was established to provide vacation benefits to participants in the plan established by the Fund. The Fund was created by a Declaration and Agreement of Trust dated July 1, 1962, as subsequently amended and restated, between the Great Lakes Fabricators and Erectors Association (the "Association") and the Local No. 25, International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers, AFL-CIO ("Local 25"). The Fund sponsors the Iron Workers' Local 25 Vacation Pay Fund Plan (the "Plan") to pay vacation benefits. The Plan is funded by contributions from employers covered by collective bargaining agreements with Local 25. Compl., ECF No. 1, PageID.2.

The Fund is administered by a joint Board of Trustees pursuant to the Labor Management Relations Act of 1947 (known as the "LMRA" or eponymously as the "Taft-Hartley Act"), Section 302(c), 29 U.S.C. § 186(c), and is governed by ERISA. The joint Board of Trustees is comprised of six trustees who are fiduciaries of the Fund under ERISA. The Association appoints three Management Trustees (currently Plaintiffs Chris Vlk, Richard J. Sawhill, and James Buzzie), and Local 25 appoints three Labor Trustees (currently Michael Randick, Wayne Coffell, and Dennis Aguierre). ECF No. 1, PageID.3.

The joint Board of Trustees for the Fund and Plan holds board meetings quarterly to discuss operations. Any action taken with respect to the administration of the Plan and Fund requires a motion, second, and a majority vote by the Board of Trustees. ECF No. 1, PageID.3.

The Fund has purported to operate as a tax-exempt voluntary employee benefits arrangement ("VEBA") under Section 501(c)(9) of the Internal Revenue Code, 26 U.S.C. § 501(c)(9) ("Section 501(c)(9)"). ECF No. 1, at PageID.4. Having this status ensures that earnings on dollars invested by the Fund are considered tax-exempt by the Internal Revenue Service ("IRS"). *Id.* As a 501(c)(9) organization, the Fund is required to file an annual tax return for exempt organizations. *Id.* This includes IRS Form 990 and a benefit plan return Form 5500. *Id.* IRS Form 990 is required to be executed by an officer of the organization under penalties of perjury. *Id.* For this particular Fund, the Chairman of the Board of

Trustees signs the Form 990, which is prepared with the assistance of the Fund's auditor, Plante & Moran, PLLC ("Plante"). *Id.*

Since April 2017, the Fund has operated with co-counsel, one appointed by Labor and one by Management/Employers. In 2017, the Board of Trustees directed the Management Trustees' counsel to perform a comprehensive compliance review of the Fund. As a result of this compliance review, the Management Trustees and their counsel believe that there are certain features of the Plan that could compromise the tax-exempt status of the Fund, because the features appear to violate the requirements for a tax-exempt VEBA that can provide "other benefits" (such as vacation benefits) under Section 501(c)(9). The two features of the Plan the Management Trustees believe to be problematic for the Fund's tax-exempt status are: (i) the frequency with which participants receive distributions of benefits under the Plan; and (ii) the ability of participants to assign their vacation benefits to pay union dues and other non-vacation-related purposes (these two features are collectively referred herein as the "Plan Features"). ECF No. 1, PageID.4-5.

The Management Trustees and their counsel raised these concerns regarding the Plan Features and resulting tax compliance issues with the Labor Trustees and the Labor Trustees' counsel in November 2017. The Management Trustees proposed amending the Plan to revise or eliminate the Plan Features to ensure compliance with Section 501(c)(9) and the permitted operations of a tax-exempt vacation plan. Plaintiffs allege no

action was agreed to by the Labor Trustees. Plaintiffs allege that the Management Trustees continued to raise concerns regarding the Plan Features and the Fund's compliance with Section 501(c)(9) over the next year, but the Labor Trustees and their counsel declined to take action with respect to these issues. ECF No. 1, PageID.5-6.

In approximately November 2018, the joint Board of Trustees agreed to direct their joint co-counsel to discuss issues related to the 501(c)(9) status of the Fund and to work towards a resolution regarding the Plan Features. As negotiations between counsel occurred, the Fund's auditor had to begin preparing the Form 990 for fiscal year ending April 2018, which was required to be submitted to the IRS by March 15, 2019, after all applicable extensions. The Fund's audit firm was unable to complete an audited financial statement for the Fund for the fiscal year ending April 2018, and the required Form 5500 could not be filed by its final February 15, 2019 due date.

Plaintiffs allege that after continued discussions on the topic, on March 12, 2019, joint counsel for the Board of Trustees agreed to take corrective action that included amending the Plan to correct the Plan Features to be compliant with Section 501(c)(9). As a result of this agreement, on March 15, 2019 Plaintiff Management Trustee Patrick Baker (the Chairman of the Fund at the time) signed the Form 990 for the plan year ending in April 2018, which was then submitted by the

Fund's auditor to the Internal Revenue Service for processing, allowing the Form 990 to be timely filed. ECF No. 1, PageID.6-7.

By signing the Form 990, Mr. Baker was required to represent and certify under penalties of perjury that the information on the form was correct, including that there were no taxes owed and that the Plan was in compliance with Section 501(c)(9). Plaintiffs allege that Mr. Baker was comfortable making this representation because, upon good faith information and belief, he understood the tax-compliance issues for the Fund were going to be resolved based on the agreement of the Board of Trustees and their counsel. ECF No. 1, PageID.7.

The Board of Trustees met for a regularly scheduled meeting on March 25, 2019, just ten days after the Form 990 was submitted to the IRS. Plaintiffs allege that when the Management Trustees moved to ratify the recent agreement to amend the Plan to correct the Plan Features, Labor Trustees' counsel, Mr. Asher, announced that the Labor Trustees would no longer agree to amend the Plan and that there was no basis to do so. Plaintiffs allege that Mr. Asher asserted that the concerns regarding the Plan Features and tax-exempt status of the Fund were not supported by any legal authority and were simply a matter of Management Counsel's personal opinion, and therefore were not required to be acted upon. There was no motion and the Board of Trustees did not vote on whether to amend the Plan to correct the Plan Features at the March 25, 2019 Board meeting. ECF No. 1, PageID.7-8.

The Plaintiffs allege that they were left without any resolution and the Management Trustees continued to discuss how to correct the Plan Features in light of the Labor Trustees' refusal to amend the Plan. The Management Trustees also discussed with Plante whether an amended Form 990 needed to be filed to accurately reflect the Trustees' concerns surrounding the tax-exempt status of the Fund or if the previously filed 990 could be withdrawn. Plante advised that the filed return could not be withdrawn, and the only available option to correct the return was to file an amended return. ECF No. 1, PageID.8.

The Board of Trustees had another scheduled board meeting for June 19, 2019, at which the Management Trustees intended to discuss with the Labor Trustees the need to amend the previously filed Form 990 if the Plan Features were not going to be addressed via an amendment to the Plan. The Plaintiffs allege that the Labor Trustees did not attend the June Board meeting. The Board of Trustees most recently had a board meeting on September 11, 2019. Prior to this meeting, the Management Trustees had directed their appointed counsel to prepare a written opinion to the joint Board of Trustees regarding several fiduciary issues that concerned them, including the tax-exemption issue, and whether the Trustees had an obligation to self-report this issue or alternatively take any other action. At the September meeting, management counsel presented its report, which recommended that the Plan be amended to correct the Plan Features, or that an amended Form 990 be filed. As a

result of this report, Plaintiffs allege that Management Trustee Richard Sawhill attempted to make a motion that would require the Board of Trustees, in the absence of amending the Plan to correct Plan Features, to file an amended Form 990 with the IRS to accurately reflect the uncertain tax position of the Plan and its compliance with Section 501(c)(9). ECF No. 1, PageID.9.

Plaintiffs allege that in response to Mr. Sawhill's attempted motion, Labor Trustee Michael Randick (the Fund's current Chairman) refused to allow Mr. Sawhill to make a motion on this issue and instead declared that Mr. Sawhill's attempted motion was out of order. *Id.* As a result, no motion was made, and no proposed action could be voted on. Since the September 11, 2019 meeting, Plaintiffs allege that the Labor Trustees have not agreed to take any joint action with the Management Trustees to amend the Plan or file an amended Form 990. *Id.* at PageID.10.

## Contentions

According to Defendants, this case is merely a disagreement among the Fund trustees regarding a tax issue, and Plaintiffs have not availed themselves of the arbitration process provided in the Fund's governing documents for resolving just this kind of dispute. ECF No. 20, PageID.230-31. Consequently, Defendants contend that there is no justiciable case or controversy and this Court should dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. *Id.* at PageID.223. Defendants also argue, in the

alternative, that this case should be dismissed under Rule 12(b)(6) for failure to state a claim against the Fund. *Id.* at PageID.240.

Plaintiffs argue that this Court has jurisdiction to resolve the dispute under ERISA, 29 U.S.C. § 1132(a)(3), and that they have not brought the case to arbitration under the terms of the Plan because there has not been a "deadlock" among the Trustees. *Id.* at PageID.287. Alternatively, Plaintiffs argue that the Form 990 dispute is an "extraordinary matter" not subject to arbitration. *Id.*

## Legal Standard

When grounds for dismissal exist under both 12(b)(1) and 12(b)(6), the court should dismiss on the jurisdictional ground, without reaching the question of failure to state a claim. 5B C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1350 (3d ed. 2020). District courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. A federal court's exercise of subject matter jurisdiction is proper when the complaint's allegations establish federal claims. *Rote v. Zel Custom Mfg. LLC,* 816 F.3d 383, 387 (6th Cir. 2016). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction generally comes in two varieties: a facial attack or a factual attack. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on the subject matter jurisdiction alleged in the complaint questions only the sufficiency of the pleading. *Id.* When reviewing a facial attack, the court takes the

allegations in the complaint as true. *Id.* At all times, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

## Discussion

It is undisputed that the Fund is subject to the provisions of the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 141 *et seq.* Section 302(c)(5) of the LMRA explicitly requires employee benefit trust funds to include a mechanism for arbitrating deadlocks among trustees that develop over the course of fund administration. 29 U.S.C. § 186(c)(5). As the Third Circuit recently explained,

> Section 302(c)(5)(B) of the LMRA, 29 U.S.C. § 186(c)(5)(B), serves the important function of ensuring that a mechanism is available to break any deadlocks that arise between competing factions of trustees in the course of administering an employee benefit trust fund. As we have explained, the boards that oversee these trust funds must maintain equal representation of employers and employees, and frequent deadlocks between the two factions are a foreseeable result. To address potential stalemates, § 302 requires the two groups to agree on an impartial umpire to decide such dispute. 29 U.S.C. § 186(c)(5)(B). If they fail to agree within a reasonable period of time, either party may petition a federal district court for the appointment of such an impartial umpire. *Id.*

*Employer Trustees of W. Pennsylvania Teamsters v. Union Trustees of W. Pennsylvania Teamsters*, 870 F.3d 235, 240 (3d Cir. 2017).

In this case, the Fund's governing documents contain just such a provision:

> Section 7. Deadlock. A deadlock shall be deemed to exist whenever (1) a proposal, nomination, motion or resolution made by any Trustee is not adopted by a majority vote (unless the same has been defeated by a majority vote) and the supporters of the proposal, nomination, motion or resolution notify the remaining Trustees in writing that a deadlock exists; . . . In the event of such deadlock arising, the Employer Trustees and the Employee Trustees shall meet for the purpose of agreeing upon an impartial umpire to break the deadlock by deciding the dispute in question. In the event of the inability of the Employer Trustees and the Employee Trustees to agree upon the selection of such impartial umpire, then on the petition of any of the Trustees, the District Court of the United States in the Eastern District of Michigan, Southern Division, shall be empowered to make such an appointment. . . .

ECF No. 20-2, PageID.255-56. Notwithstanding the above, the Plaintiff Management Trustees do not ask this Court to appoint a neutral umpire to resolve the impasse. Instead, Plaintiffs alternatively argue both that there has not been a deadlock because the matter has not been brought up for a vote, and that the amended tax form issue is an "extraordinary matter" not suitable for arbitration. ECF No. 23, PageID.289-90. For reasons both practical and prudential, neither argument is persuasive.

First, there is no question that this case arises from a stalemate between the Union Trustees and the Management Trustees over a routine tax-filing issue, and any ambiguities in the language of the arbitration provision should be read in favor of arbitration. Plaintiffs argue that there has been no deadlock because a vote never took place on the Management Trustees' motion, apparently because the chair ruled

their motion out of order during a September 2019 meeting on a procedural objection. ECF No. 23, PageID.289. Plaintiffs argue that because there has been no deadlocked vote, they do not have to go to arbitration. *Id.* The provision at issue here clearly contemplates a vote, as by its own terms it defines a deadlock as occurring when "a proposal, nomination, motion or resolution made by any Trustee is not adopted by a majority vote (unless the same has been defeated by a majority vote) and the supporters of the proposal, nomination, motion or resolution notify the remaining Trustees in writing that a deadlock exists." ECF No. 20-2, PageID.255-56. At the same time, it cannot be said that the provision is unambiguous, as it does not explicitly require a vote, and it is indeed true here that Plaintiffs' motion was "not adopted by a majority vote" of the Trustees.

A plausible reading of the provision would be that all Plaintiffs need to do at this point—knowing that the vote would inevitably result in a deadlock—is inform Defendants in writing that a deadlock exists. *See id.* As Plaintiffs note, the Sixth Circuit has not ruled on whether or not a vote must take place in this context in order to constitute a "deadlock on administration," but given Congress' stated preference for arbitration and the Supreme Court's related guidance (in the context of deciding whether a particular issue is arbitrable) that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute," the Court will resolve the threshold ambiguity here in favor of arbitrability. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)).

Moreover, it is clear that as a practical matter, procedural gamesmanship surrounding the ability to bring a motion to a vote—of which both Plaintiffs and Defendants appear to be guilty—cannot be permitted to stymie the agreed-upon process for resolving disputes among the trustees. Were this Court to hold otherwise, either Labor or Management Trustees could avoid arbitration in the future by never bringing issues to a vote[2] (or by knowingly doing so in a manner that triggers a procedural objection that a vote would be out of order). One side could then avoid consideration of the other side's proposals altogether by not allowing a vote to occur while simultaneously arguing that judicial review was improper, as Defendants have argued here. A requirement that a vote must take place when one-half of the Trustees have the procedural means to prevent such a vote—as is apparently the case here—would render the arbitration provision meaningless whenever one side would rather come to federal court. Such an interpretation

---

[2] Indeed, Plaintiffs have not moved for a vote on the Form 990 issue at either of the Fund meetings that have taken place during the pendency of this litigation. ECF No. 24, PageID.299.

cannot stand, and to hold otherwise would "violate the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2nd Cir. 1986) (holding that lawsuit by one-half of trustees of ERISA fund was properly dismissed because plaintiff trustees failed to comply with arbitration procedures before filing suit in federal court).

Next, Plaintiffs argue that the issue here, whether or not the Fund needs to file an amended 2018 tax form, is not arbitrable because it is an "extraordinary matter" and not an issue involving the day-to-day management of the Fund. Plaintiffs cite to no authority holding that an issue pertaining to an amended tax form was "extraordinary," as opposed to ordinary day-to-day fund management. And beyond merely asserting that the issue is extraordinary because it could result in tax liability for the fund, Plaintiffs provide no explanation for why the Court should find it so. On the record before it, the Court cannot conclude that the dispute over whether the Fund ought to update a particular tax form is an "extraordinary matter." Thus the Plan's arbitration process, not a lawsuit before this Court, should govern this dispute.

Finally, Plaintiffs take the inconsistent position of, on the one hand, claiming that they are not asking the Court to decide the tax issue under Section 501(c)(9) because it is up to the IRS to decide, Compl. ¶ 17 n.1, ECF No. 1, PageID.5, but on the other hand, seeking a declaratory judgment that the Fund should be required to file amended statements

to comply with that section. Compl. ¶ 43, ECF No. 1, PageID.11. To enter a declaratory judgment on this issue would be impossible based on the record before the Court. As a prudential matter, therefore, the Court agrees with Plaintiff's first position, that the propriety of the Fund's tax filings is a matter more properly for the IRS—and for the Trustees themselves through arbitration—to address and decide.

## Conclusion

For the reasons above, Defendants' Motion to Dismiss (ECF No. 20) is **GRANTED**. The Court retains jurisdiction over this matter should any of the Trustees seek appointment of a neutral umpire pursuant to the Fund's governing documents.

**SO ORDERED**.

DATED this 1st day of September, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge